IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

04 NOV -1  AM 10: 55

U.S. DIST....
N.D. OF A....

JEANETTA STRICKLAND,  )
    )
        Plaintiff,  )
    )
    )   CASE NO.: CV-03-HS-439
v.  )
    )
MITSUBISHI MOTORS CREDIT  )
OF AMERICA, et al.,  )
    )
        Defendant.  )

**ENTERED**

**NOV - 1 2004**

## <u>Memorandum Opinion</u>

THIS MATTER is before the Court on Defendant Mitsubishi Motors Credit of America,

Inc.'s ("MMCA") Motion to Dismiss Counts One and Two of the Complaint (doc. 32), filed on May

12, 2004.  The motion was joined by Defendant Serra Automotive, Inc. d/b/a Serra Mitsubishi

("Serra"), on May 24, 2004 (doc. 36). This is a civil action filed by the Plaintiff, Jeanetta Strickland,

against Defendants MMCA, Serra, and JMIC Life Insurance Company, on February 27, 2004.

*Complaint*, at 1 (doc. 1).  The Complaint alleges as to all Defendants violation of the Truth in

Lending Act, 15 U.S.C. §§1601-1607 (Count One); and violation of the Consumer Leasing Act and

implementing regulations, 15 U.S.C. §§ 1667-1667e, 12 C.F.R. part 213 ("Regulation M"), and Staff

Commentary, 12 C.F.R. part 213 supp I ("Commentary") (Count Two); and other counts.  The issue

before the Court is whether Counts One and Two of the Complaint are time-barred.  If Counts One

and Two are not time barred, the issue is whether Count One of the Complaint is due to be dismissed

as against MMCA alone, because MMCA was an assignee of the Contract between Plaintiff and

Serra.  Also, if Counts One and Two are not time-barred, the issue then becomes whether Count Two

is due to be dismissed against all defendants because the contract at issue is not a "consumer lease"



because it is for a total contractual obligation exceeding $25,000.00.

## I. BACKGROUND

The Complaint makes the following allegations:

8. On or about February 26, 1997, plaintiff Jeanetta Strickland entered into what she believed to be and was told by Defendants was a purchase money financing agreement styled as "Diamond Advantage Plan Retail Installment Sale Contract" with the Defendants for a slightly used (Dealer's Demonstration Model) 1997 Mitsubishi Montero automobile. The agreed upon case price for the Montero in this document was $28,022.71. After adjustments for a cash down payment, credit and disability life insurance and other fees, the amount to be financed was defined in this document as $26,991.29. On February 27, 1997, Ms. Strickland signed a Retail Buyer's Order that included additional terms and conditions for the same vehicle. The agreed upon total sales price in this document was $27,100.

9. Based on the representations made to her, and the documents provided to her by the defendants, Ms. Strickland was led to believe and did in fact believe and reasonably rely on the Defendants' representations that she was purchasing the Montero. In reality, the Defendants created, set up and managed a scheme and arrangement to convert Ms. Strickland's automobile to the Defendants' possession, control and use at the end of the term of the agreement. For example, the agreement required a monthly payment for 47 months and a "balloon" 48th payment , designed to approximate the residual value of the car. The agreement provided that at the end of the term, there would be unspecified wear and tear fees, excess mileage fees and a "disposition fee" not to exceed $350. The plaintiff was also told she was required to purchase credit life and credit disability insurance, which added to the price of the vehicle, as well as her payments. The credit life insurance cost was computed on a 49 month schedule although the financing agreement was for a 48 month period, requiring prepayment for an additional month of insurance for which, based on the terms of the Defendant's contract, was of no value to Ms. Strickland. This additional insurance was in the amount of $453.58. Ms. Strickland was told by the defendants this arrangement was the only way she could qualify for the Montero. Despite the representations that this was the **sale** of the Montero, the defendants included provisions in the agreement which egregiously restricted and limited Ms. Strickland's rights as a "titled owner" Ms. Strickland's only "options" at the end of the agreement were to "sell" (return) the car back to the defendants, pay the defendants the balloon payment or enter into a new financing agreement only with MMCA and Serra Mas Strickland was provided no other options within the agreement as to the return of the vehicle. She could neither sell nor trade the Montero to anyone other than the defendants without the written permission of the Defendants. In addition, Ms. Strickland could not refinance the Montero with any entity other than the defendants.

2

10 Approximately one month prior to the date of the last payment, a representative of the defendants went to Ms Strickland's place of employment to "inspect" the Montero. Then, on the date of the last payment, Ms. Strickland returned the car to Serra, which was represented to her to be what was required of her to complete the transaction. At the time of the "turn-in"," Ms. Strickland was in fact told she was making a "lease turn-in." At that time, Ms. Strickland signed an odometer form required by Defendants on which the transaction was noted as a "turn-in." At the time of this "turn-in," Ms. Strickland was told by Defendants that her obligations were complete under the agreement. Indeed, Serra took possession of Ms. Strickland's Montero at that time. However, four months after the return of the automobile, Ms. Strickland received a letter from MMCA requesting payment for unspecified wear and tear, disposition and other unspecified fees. At that time, the vehicle was sill titled in Ms. Strickland's name. In addition, the remaining balance of the balloon payment is noted as a negative entry on Ms. Strickland's credit report, despite the fact she turned the vehicle in on February 28, 2001 as required by her agreement with Defendants Essentially, the defendants took possession of plaintiff's vehicle and converted that vehicle to its sole use and control, made no payment whatsoever to plaintiff (or on plaintiff's behalf), and now claim plaintiff owes additional money.

11. After Defendants' demands, Ms Strickland then consulted an attorney, who wrote a letter to MMCA on her behalf. MMCA responded by reducing the total amount due without explanation, and demanding that the balance be paid under threat of unfavorable credit reporting.

12. Based on the representations of the defendants, Ms. Strickland entered into what she was led to believe was a purchase of an automobile. She was induced to enter the agreement with the defendants based on fraudulent and false statements related to the nature of the agreement and her obligations thereunder. However, at the conclusion of the term, the defendants, treating the agreement like a lease, took her vehicle without any payment whatsoever (either to Ms. Strickland or to payoff the remaining balance) and left title in Ms. Strickland's name. Then, four months later, the defendants billed Ms. Strickland for $2,609.90 in unexplained fees (later reduced without explanation to $2,231.09) and made no corrections on Ms. Strickland's credit report. This has hindered and caused additional expense and distress to Ms. Strickland in obtaining financing of her home and other items.

13. Based on the defendant's fraudulent concealment of facts, Ms. Strickland did not become aware, and could not have become aware, of the defendants' wrongful conduct until within one year of the filing of this Complaint, when the defendants demanded payment from her, after having accepted Ms. Strickland's vehicle, and made adverse credit reports about Ms. Strickland.

3

14. Upon information and belief, the defendants engaged in a similar pattern and practice of such fraudulent vehicle agreements with customers throughout Alabama and other jurisdictions.

15. At all times relevant hereto, the defendants regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action was initially payable, making defendants creditors within the meaning of 15 U.S.C. § 1602(f) and Regulation Z, part 226 2(a)(17). Moreover, defendants' regular business activities include leasing and offering to lease motor vehicles. In many cases, the total contractual obligation under the lease is less then $25,000.

*Complaint*, at 2-5 (doc. 1).

## II. DISCUSSION

Defendants move this Court to dismiss Counts One and Two of the Complaint, pursuant to

Fed. R. Civ. P. 12 (b), for "failure to state a claim upon which relief can be granted." *Fed. R. Civ.*

*P.* 12(b)(6). Matters outside the pleadings have been presented to this Court, but the Court has

specifically excluded those matters in reaching its conclusions. Accordingly, the motion is not

converted into a Motion for Summary Judgment.

In dismissing a complaint, the facts alleged therein must be taken as true and the district court must determine "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Marshall County Bd. of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993).

TILA's declaration of purpose states, in relevant part:

The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms ... would be strengthened by the informed use of consumer credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to

4

> protect the consumer against inaccurate and unfair credit billing and credit card practices. 15 U.S.C. § 1601(a). **As a remedial statute, TILA must be construed liberally in favor of the consumer.** *Ellis v. Gen. Motors Acceptance Corp.,* 160 F.3d 703, 707 (11th Cir.1998); *Cody v. Cmty. Loan Corp. of Richmond County,* 606 F.2d 499, 505 (5th Cir.1979).

*Bragg v. Bill Heard Chevrolet, Inc.*, 2004 WL 1418428, *3 (11th Cir. 2004) [emphasis added].

## A.    Count One

### 1.    Specific Allegations of the Count

The Complaint alleges as to all defendants violation of the Truth in Lending Act, 15 U.S.C.

§§1601-1667 (Count One).  Specifically, the Complaint states:

> 17    The defendants, in not properly disclosing the true nature of the finance agreement to Ms. Strickland, violated the Consumer Credit Protection Act (usually referred to as the "Truth in Lending Act"), 15 U.S.C. §§ 1601-1667, (hereinafter "TILA") and regulations promulgated thereunder.  Specifically, the defendants structured the agreement to appear to be a sale, to induce customers to think they were "buying" a vehicle, and in so doing, the defendants also failed to disclose that Credit Life and Disability Insurance were inappropriate for the type of agreement entered into by Ms. Strickland and required Ms. Strickland to purchased [sic] an additional 49th month of Credit Life insurance.  The defendants improperly drafted the written agreements in an effort to mislead consumers as to the true nature of the transaction, in violation of TILA.

> 18. Defendants further failed to make required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a) and Regulation Z, part 226.17(a).

*Complaint*, at 5-6.

### 2.    Application of the Statute of Limitations.

The applicable statute of limitations to this Chapter can be found at 15 U.S.C. § 1640.  That

section states, in pertinent part:

> **(e) Jurisdiction of courts; limitations on actions; State attorney general enforcement**

5

Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.

15 U.S.C.A. § 1640. All parties to the Motion to Dismiss agree that this period applies. *Motion to Dismiss Counts One and Two of the Plaintiff's Complaint*, at 2; *Plaintiff's Reply to Defendants Mitsubishi Motors Credit of America, Inc. and Serra Mitsubishi's Motion to Dismiss*, at 4. The Complaint was filed on May 12, 2004. *Complaint*, at 1 (doc. 1). By statute, for Count One to survive, the violation must have occurred on or after May 12, 2003.

According to the Complaint, the contracts at issue in this matter are: 1) the February 26, 1997, "Diamond Advantage Plan Retail Installment Sale Contract" for a slightly used (Dealer's Demonstration Model) 1997 Mitsubishi Montero automobile, and 2) the February 27, 1997, Retail Buyer's Order that included additional terms and conditions for the same vehicle. *Id.* The violations averred in the Complaint center around these two documents and the time frame in which they were signed. Accordingly, the alleged violations themselves did not occur within the one year statute of limitations.

The Plaintiff argues that the one year statute of limitations period does not apply in this case. Specifically, she argues that, as the Eleventh Circuit Court of Appeals has held in *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703 (11th Cir. 1998), that the doctrine of equitable tolling applies to TILA actions under certain circumstances. As the Court pointed out in *Ellis*:

"Equitable tolling" is the doctrine under which plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances. *See Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 347, 22 L.Ed. 636 (1874) (where a party injured by another's fraudulent conduct "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered ..."). *See also Osterneck v. E.T. Barwick Indus.,* 825 F.2d 1521, 1535 (11th Cir.1987), *aff'd, Osterneck v. Ernst &*

6

*Whinney,* 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989) (if third party is in privity, or a principal-agent relationship with the defendant exists, defendant's approval of the concealment may be sufficient to toll the statute). Unless Congress states otherwise, equitable tolling should be read into every federal statute of limitations. *Holmberg,* 327 U.S. at 394-96, 66 S.Ct. 582.

*Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11ᵗʰ Cir. 1998). However, equitable

tolling is an extraordinary remedy which is typically applied sparingly. *Steed v. Head*, 219 F.3d 1298,

1300 (11ᵗʰ Cir. 2000) (citing *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112

L.Ed.2d 435 (1990)).

In order to apply the doctrine to this case, the plaintiff must *allege* that she was unable to sue

during the statutory time frame due to "inequitable circumstances". In her brief and Complaint, she

states that the statute should be tolled because the defendants "fraudulently concealed" the cause of

action. The *Ellis* Court recognized that fraudulent concealment of a cause of action could toll the

statute of limitations in a TILA case. *Ellis*, 160 F.3d at 708. However, the Court did not address

what the elements of fraudulent concealment were. In its holding, it did, however, cite decisions

approvingly from the Third, Sixth, Ninth, and Seventh Circuits.

In *Jones v. Trans Ohio Sav. Ass'n,* 747 F.2d 1037, 1043 (6ᵗʰ Cir. 1984), cited approvingly by

the Eleventh Circuit Court of Appeals, the Sixth Circuit held that:

> for application of the doctrine of fraudulent concealment, the limitations period runs
> from the date on which the borrower discovers or had reasonable opportunity to
> discover the fraud involving the complained of TILA violation.

*Jones v. TransOhio Sav. Ass'n,* 747 F.2d 1037,1043 (6ᵗʰ Cir. 1984). The Court however did not

analyze the defense in the context of the facts of the case. **Because the Plaintiff had alleged**

**fraudulent concealment in the complaint, the Court determined that such allegation must be**

**taken as true at the motion to dismiss stage and reversed the District Court's granting of a**

7

**motion to dismiss.**   Similarly here, the plaintiff has alleged that "[b]ased on the defendant's fraudulent concealment of facts, Ms. Strickland did not become aware, and could not have become aware, of the defendants' wrongful conduct until within one year of the filing of this Complaint." Similarly, here, the facts alleged in the complaint must be taken as true. At this stage, based on the allegations, the Complaint has been timely filed. The motion to dismiss Count One for failure to file within the applicable limitations period is therefor due to be **DENIED**.

### 2.    The Effect of MMCA's Status As An Assignee

Federal law provides that

> Except as otherwise specifically provided in this subchapter, any civil action for a
> violation of this subchapter or proceeding under section 1607 of this title which may
> be brought against a creditor may be maintained against any assignee of such creditor
> only if the violation for which such action or proceeding is brought *is apparent on
> the face of the disclosure statement*, except where the assignment was involuntary.

15 U.S.C.A. § 1641.  In addition, the Federal Trade Commission has issued the following regulation:

> § 433.2 Preservation of consumers' claims and defenses, unfair or deceptive acts or
> practices.

> In connection with any sale or lease of goods or services to consumers, in or affecting
> commerce as "commerce" is defined in the Federal Trade Commission Act, it is an
> unfair or deceptive act or practice within the meaning of Section 5 of that Act for a
> seller, directly or indirectly, to:

> (a) Take or receive a consumer credit contract which fails to contain the following
> provision in at least ten point, bold face, type:

> NOTICE

> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO
> ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT
> AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT
> HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY
> THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR
> HEREUNDER.

8

16 CFR § 433.2.

The Plaintiff contends that the FTC regulation makes MMCA liable despite the wording of

the statute. However, the *Ellis* Court specifically held that

> the language required by the FTC regulation cannot override the express language of
> TILA in which Congress specifically decided that assignee creditors will only be
> liable for TILA violations that are apparent on the face of the disclosure statement.

*Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 709 (11th Cir. 1998). There is no allegation

in the Plaintiff's brief that the alleged TILA violations are apparent on the face of the disclosure

statement. However, in Count One, Plaintiff alleges that "Defendants further failed to make required

disclosures clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a) and Regulation

Z, part 226.17(a)." This is tantamount to an allegation of TILA violations apparent on the face of

the disclosure statement. Accordingly, the Motion to Dismiss these claims as against MMCA is due

to be **DENIED, without prejudice**. By separate order, the plaintiff will be given 14 days to file a

First Amended Complaint stating with specificity exactly how all Defendants "failed to make

required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. § 1632(a) and

Regulation Z, part 226.17(a)." As to the remaining allegations in Count One against MMCA, the

Motion to Dismiss is due to be **GRANTED** as these violations are not alleged to have been apparent

on the face of the disclosure statement.

**B.      Count Two**

    **1.      Specific Allegations of the Count**

Count Two of the complaint reads as follows:

20 Plaintiff adopts and incorporates paragraphs 1 through 19 as if fully set forth
herein.

21 The federal Consumer Leasing Act, 15 U.S.C. §§ 1667 - 1667e, (hereinafter "CLA"), and implementing Federal reserve Board regulations, 12 C.F.R. part 213 ("Regulation M"), and Staff Commentary, 12 C.F.R. part 213 spp. I ("Commentary"), require extensive disclosures in consumer lease transactions and regulate certain substantive terms of such transactions.

22.   The defendants, in not properly disclosing the true nature of the finance agreement to Ms. Strickland, violated the CLA, and regulations promulgated thereunder.  The CLA was intended to provide consumers with comprehensive information about the actual costs of leasing, enabling them to compare alternatives Specifically, the defendants structured the agreement to appear to be a sale, to induce customers to think they were "buying" a vehicle, and in so doing, the defendants failed to disclose that the relationship would always be treated as a lease.  The defendants also failed to disclose that Credit Life insurance was inappropriate for the type of agreement entered into by Ms. Strickland and was computed for a period of greater that the term of the agreement. The defendants improperly drafted the written agreements in an effort to mislead consumers as to the true nature of the transaction, in violation of CLA.

23.  As a proximate consequence of the defendants' violation of CLA, the plaintiff was injured and damaged.  A lessor in violation of the CLA or implementing regulations is liable as provided in TILA (paragraph 19, above)

*Complaint*, at 6.  The relevant statute of limitations for this act can be found at 15 U.S.C.A. §

1667d(c) which reads:

(c) Jurisdiction of courts; time limitation

Notwithstanding section 1640(e) of this title, any action under this section may be brought in any United States district court or in any other court of competent jurisdiction. Such actions alleging a failure to disclose or otherwise comply with the requirements of this part shall be brought within one year of the termination of the lease agreement.

15 U.S.C.A. § 1667d(c).  Assuming as the Court must, that the agreement was a lease as alleged by

the Plaintiff, the Complaint alleges that that lease terminated when the plaintiff "turned the vehicle

in on February 28, 2001 as required by her agreement with Defendants."  Accordingly, the action

should have been filed by February 28, 2002.

10

The Plaintiff argues that equitable tolling should also apply in this instance. However, unlike the TILA claim, there is no case support for that proposition. Plaintiff recognizes that "courts have not yet recognized that claims under the CLA are subject to equitable tolling," but urges this Court to apply general rules of construction, applicable to TILA claims to claims under the CLA. Absent authority on point for that issue, the Court will not enlarge the statute of limitations. The CLA claim, Count II, is time barred. The Motion to Dismiss this claim will be **GRANTED**. Count II will be **DISMISSED, with prejudice.**

DONE this ___/___ day of November, 2004.

VIRGINIA EMERSON HOPKINS
UNITED STATES DISTRICT JUDGE